| | |
|---|---|
| DISTRICT COURT, ARAPAHOE COUNTY, STATE OF COLORADO | DATE FILED: March 12, 2021 6:28 PM<br>FILING ID: 32D01B832DC9A<br>CASE NUMBER: 2021CV30486 |
| Court Address:<br>7325 S. Potomac St.<br>Centennial, CO 80112 | |
| **Plaintiff:**<br><br>**MARTHA LUGO**<br><br>v.<br><br>**Defendants:**<br><br>**TRUTH CORPORATION, d/b/a ACCOUNTABLITY POLYGRAPH SERVICES, a Colorado Corporation; and**<br><br>**GALE J. PAGE, an individual.** | ▲ COURT USE ONLY ▲<br><br>Case Number: _____<br><br>Ctrm.:        Div.: |
| Attorneys:   Julian G.G. Wolfson (50603)<br>            Claire E. Hunter (39504)<br>Address:    HKM Employment Attorneys LLP<br>            730 17th Street, Suite 750<br>            Denver, CO 80202<br>Phone No.:   720.668.8989<br>E-mail:     jwolfson@hkm.com<br>            chunter@hkm.com | |

## COMPLAINT AND JURY DEMAND

Plaintiff, Martha Lugo ("Plaintiff"), by and through her attorneys, HKM Employment Attorneys LLP, brings this Complaint and Jury Demand ("Complaint") against Defendants Truth Corporation d/b/a Accountability Polygraph Services ("APS") and Gale J. Page ("Mr. Page"), and, in support thereof, alleges as follows:

### INTRODUCTION

1.      In October of 2018, after years of working in the criminal justice system, and with an understanding of the dire need for individuals who could administer polygraphs to Spanish-

1

speaking sex offenders, Ms. Lugo found a job vacancy posted by APS, which invited individuals with no training or experience in polygraphy to apply.

2.      Immediately thereafter, Ms. Lugo set her sights on becoming a Sex Offender Management Board ("SOMB") approved examiner.

3.      Eager to seize this opportunity, Ms. Lugo quickly submitted an application to APS to work as a polygraph examiner.

4.      On or around March 18, 2019, after successfully interviewing with APS several months earlier, Ms. Lugo entered into an Employment Agreement ("Agreement") with APS, which provided the terms of Ms. Lugo's compensation structure.

5.      Under this compensation structure, Ms. Lugo would be paid a certain percentage of all monies invoiced from the polygraphs she performed on behalf of APS.

6.      In further consideration of this Agreement, Plaintiff vowed to work exclusively for APS for a period of four years. In exchange, APS agreed, in pertinent part, that it would: (A) pay for Ms. Lugo's tuition to attend polygraph school and training, and (B) conduct yearly evaluations of Ms. Lugo's work.

7.      On or around February 28, 2020, APS failed to pay Ms. Lugo for her work on six different polygraphs, inaccurately claiming that they were invalid because they lasted less than the ninety minutes allowed for such polygraphs. By doing so, APS failed to pay Ms. Lugo the requisite minimum wage for performing this work, in violation of state and federal law, and in contravention of her Agreement with APS.

8.      Despite not properly compensating Ms. Lugo for the work she performed in February of 2020, she continued to work for APS under the terms of the Agreement in attempt to honor the terms of the Agreement and in light of the dire economic conditions caused by the COVID-19 pandemic.

9.      Approximately four months later, in July of 2020, APS suddenly informed Ms. Lugo that it would be deducting $25.00 from each of the exams she performed in order to conduct evaluations of her exam reports. The Agreement, however, did not provide APS with the authority to make such deductions, which were otherwise never agreed upon.

10.      In light of APS's failure to properly compensate Ms. Lugo for the work that she had performed, Ms. Lugo submitted a statutory wage demand to APS and Mr. Page for $725.00 on July 17, 2020.

11.      Less than an hour later, APS and Mr. Page responded to Ms. Lugo's wage demand by terminating her employment in retaliation for engaging in this protected conduct in violation of Colorado's well-established public policy.

12. As a result of APS' and Mr. Page's unlawful conduct, Ms. Lugo has suffered significant damages. In attempt to seek redress for these damages, Ms. Lugo now brings the following claims against Defendants for (A) failure to pay wages in violation of the Colorado Wage Claim Act, C.R.S. § 8-4-101, *et. seq.*; (B) improper payroll deductions in violation of the Colorado Wage Claim Act, C.R.S. § 8-4-105; (C) failure to pay wages in violation of the Colorado Minimum Wage Order, 7 CCR 1103-1 (2019) (2020) (2021); (D) retaliation in violation of the Colorado Wage Claim Act, C.R.S. § 8-4-120; (E) retaliation in violation of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3); (F) wrongful termination in violation of public policy; (G) breach of contract; and (H) civil theft.

## JURISDICTION AND VENUE

13. Plaintiff incorporates by reference all paragraphs in this Complaint as though set forth fully and separately herein.

14. Defendant APS is subject to personal jurisdiction in Colorado because it is a Colorado corporation that conducts substantial business in this state, and a substantial amount of the acts and omissions alleged herein occurred in this State. Defendant Page is subject to personal jurisdiction in Colorado as he is domiciled in Colorado and all actions which he is alleged of committing in this Complaint occurred in Colorado.

15. Venue is proper pursuant to C.R.C.P. 98(c) as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Eighteenth Judicial District—Arapahoe, Colorado.

## PARTIES

16. Plaintiff incorporates all the paragraphs of this Complaint as though set forth fully and separately herein.

17. Plaintiff, Martha Lugo, is a former employee of Defendant. At all times relevant to this Complaint, Ms. Lugo has been domiciled in the State of Colorado.

18. At all times relevant to this Complaint, Plaintiff was an employee of Defendant as defined by the CWCA and the FLSA.

19. At all times relevant to the Complaint, Plaintiff was an employee of Defendant in a covered industry as defined by the Colorado Minimum Wage Order and the Colorado Minimum Wage Act.

20. Defendant, Accountability Polygraph Services ("APS"), is a Colorado corporation with a principal office street address located at 68 Inverness Ln E #201, Englewood, CO 80112.

21.     APS had the power to control and/or controlled the hiring and firing of Ms. Lugo; the terms and conditions of Ms. Lugo's employment; the rates of compensation provided to Ms. Lugo; maintenance of Ms. Lugo's employment records; and compliance with regulations of governmental agencies concerning Ms. Lugo's employment.

22.     At all times relevant to this Complaint, APS has been an "employer" of Ms. Lugo in a covered industry as defined by the Colorado Minimum Wage Order and the Colorado Minimum Wage Act.

23.     Furthermore, APS is an "employer" pursuant to the Colorado Wage Act, C.R.S. § 8-4-101(6).

24.     Defendant, Gale J. Page ("Mr. Page"), is a United States citizen who, at all times relevant to this Complaint, has been domiciled in the state of Colorado.

25.     At all times relevant to this Complaint, Mr. Page has been the owner of APS. Mr. Page was further responsible for hiring, training, and supervising Ms. Lugo throughout her employment with APS.

## FACTUAL ALLEGATIONS

26.     Plaintiff incorporates by reference all paragraphs in this Complaint as though set forth fully and separately herein.

27.     Having significant experience in the criminal justice field as a Senior Probation Officer for Colorado's 18th Judicial District Probation Department, and having otherwise served as a professional Spanish language interpreter for several years, Ms. Lugo became interested in using her talents to serve as a bilingual polygraph examiner for the Sex Offender Management Board ("SOMB").

28.     Eager to obtain the requisite training and supervision in order to begin working as an Adult and Juvenile Associate Level examiner, Ms. Lugo applied for an open position at APS in October of 2018—the announcement of which clearly stated that that applicant need not have any prior experience in polygraphy.

29.     After submitting her application materials and successfully interviewing with APS, Ms. Lugo was offered position with the Company to serve as a bilingual polygraph examiner by Mr. Page.

30.     Prior to commencing her employment with APS, Ms. Lugo and APS entered into an Employment Agreement ("Agreement") on or around March 18, 2019.

31.     The Agreement provided that in exchange for Ms. Lugo's promise to work exclusively for APS for a period of four years, APS would (1) pay for Ms. Lugo to attend polygraph

4

school at the American Institute of Polygraph and any other requisite training (2) conduct yearly evaluations of Ms. Lugo and (3) compensate Ms. Lugo with commission payments for each examination she performed and invoiced.

32.     On or around February 20 and 21, 2020, Ms. Lugo conducted six polygraph examinations as part of her employment for APS. In total, the exams took approximately six and a half hours to complete.

33.     On or around February 28, 2020, Mr. Page wrote Ms. Lugo an email informing her that he had to disqualify these six exams because they allegedly did not meet SOMB standards, and that as a result, she would not receive any compensation for the work she had performed on these exams.

34.     On March 2, 2020, Ms. Lugo responded to Mr. Page as follows:

Because this is not explicitly on my contract, nor have you produced a written policy, (your words on Sunday regarding the practice of deducting pay without written policy were "it's understood"). This is not something that I had been made aware of, either in writing or verbally. I would recommend that my wages be paid for work done. The verbal discussion that we had, resulted in your request to not conduct polygraphs shorter than 90 minutes, even if clients were given a longer break as is JP's practice and his suggestion to me when I had asked him what he did. I accepted that as your instruction and as semblance of a verbal warning.

This should not interfere with my wages due for multiple polygraphs that were completed thoroughly and without long breaks. Please let me know your response to my request.

35.     Despite her valid objections, APS never compensated Ms. Lugo for any of the time she spent conducting these six polygraph exams.

36.     In an attempt to honor the terms of the Agreement, and in light of the dismal prospects of obtaining new employment during the COVID-19 pandemic, Ms. Lugo continued to perform work for APS despite this egregious violation of both state and federal law.

37.     On June 26, 2020, in contravention of the terms of the Agreement, Mr. Page emailed Ms. Lugo to inform her that he would begin deducting $25.00 from each exam performed in order to pay another employee to review her exams. Nowhere in their Agreement, or otherwise, had APS and/or Ms. Lugo agreed to such a reduction in pay.

38.     Pursuant to the Wage Act, APS was statutorily obligated to only make payroll deductions with Ms. Lugo's informed knowledge and authorization(s).

39.     As such, APS deducted amounts from Ms. Lugo's earned commissions which were arbitrary, unauthorized and unlawful under Colorado state statutory law.

40.     In light of APS' continued failure to obey state and federal wage laws, and with no other apparent recourse, Ms. Lugo submitted an email to Mr. Page with a statutory wage demand for $725.00 on July 17, 2020 for the six polygraphs she performed on or around February 20 and/or 21, 2020 as well as the monies that had been unlawfully deducted from her paycheck in July of 2020.

41.     Less than an hour later, Mr. Page responded to Ms. Lugo's wage demand by informing her that her employment with APS had been terminated.

42.     At no time has APS compensated and/or repaid Ms. Lugo for any portion of the $725.00 she requested in her July 17, 2020 wage demand.

43.     As a result of APS' failure to properly compensate Ms. Lugo for the work she performed as an employee of APS and its decision to abruptly terminate her employment in retaliation for engaging in statutorily protected activity, Ms. Lugo has suffered significant monetary damages and reputational harm within the polygraphy community.

### FIRST CLAIM FOR RELIEF
#### (Violation of the Colorado Wage Claim Act
#### For Failure to Pay Wages, C.R.S. § 8-4-101, *et. seq.*)
#### *As Against Defendant Accountability Polygraph Services ("APS")*

44.     Plaintiff incorporates by reference all paragraphs in this Complaint as if fully and separately set forth herein.

45.     Defendant APS is an employer as defined under C.R.S. § 8-4-101(5) for all applicable dates described above.

46.     Plaintiff was an employee as defined under C.R.S. § 8-4-101(4) for all of the applicable dates described above.

47.     The Wage Act, C.R.S. § 8-4-101, *et seq.* (requiring employers to pay employees all wages, "including commissions earned for labor or services performed" to employees in a timely fashion), requires Defendant APS to pay Plaintiff *all* wages earned, including all commissions Plaintiff earned for performing services on Defendant APS' behalf.

48.     Defendant APS failed to pay Plaintiff the wages she earned from the work she performed on February 20 and/or 21, 2020.

49.     In doing so, Defendant APS has violated and continues to violate the Wage Act by failing and refusing to pay Plaintiff for all time she worked and/or for all wages she earned.

6

50.     At all relevant times, Defendant APS' failure to pay Plaintiff all earned wages and compensation was willful and/or intentional because it knew or showed reckless disregard for whether it complied with the law by intentionally withholding Plaintiff's earned and owed compensation.

51.     As a result of Defendant APS' failure to pay Plaintiff all earned wages and compensation, Defendant APS is liable to Plaintiff for the value of all of Plaintiff's earned and unpaid wages, in an amount according to proof at the time of trial.

52.     On July 17, 2020, Plaintiff submitted a written demand for her unpaid wages.

53.     As of the date of this Complaint, Defendant APS has not paid Plaintiff her due and owed earned wages within 14 days of the written demand for payment as required by the Wage Act, or provided any legitimate reason for continuing to withhold her wages.

54.     As a result of Defendant APS' failure to pay Plaintiff all earned wages and compensation, and pursuant to the Wage Act, Plaintiff is also entitled to recover a penalty of 125% of the first $7,500 of the unpaid wages, and 50% of any additional amounts in excess of $7,500.

55.     To the extent that Defendant APS' above-described conduct is found to be willful, Plaintiff is also entitled to an additional 50% penalty pursuant to C.R.S. § 8-4-109.

56.     Plaintiff is entitled to and demands payment for all unpaid wages, statutory penalties, and attorneys' fees and costs, in an amount to be proven at trial.

### SECOND CLAIM FOR RELIEF
### (Violation of the Colorado Wage Claim Act
### Improper Payroll Deductions, C.R.S. § 8-4-105)
### *As Against Defendant Accountability Polygraph Services ("APS")*

57.     Plaintiff incorporates by reference all paragraphs in this Complaint as if fully and separately set forth herein.

58.     Defendant APS is an employer as defined under C.R.S. § 8-4-101(5) for all applicable dates described above.

59.     Plaintiff was an employee as defined under C.R.S. § 8-4-101(4) for all of the applicable dates described above.

60.     The Wage Act, C.R.S. § 8-4-105, provides, in pertinent part, that:

(1) No employer shall make a deduction from the wages or compensation of an employee except as follows:

7

. . .

(b) Deductions for loans, advances, goods or services, and equipment or property provided by an employer to an employee pursuant to a written agreement between such employer and employee, so long as it is enforceable and not in violation of law;

. . .

(d) Any deduction, not listed in paragraph (a), (a.5), (b), or (c) of this subsection (1), that is authorized by an employee if the authorization is revocable, including deductions for hospitalization and medical insurance, other insurance, savings plans, stock purchases, supplemental retirement plans, charities, and deposits to financial institutions;

. . .

61.     Defendant APS deducted and retained an amount from Plaintiff's gross wages without lawful purpose and without Plaintiff's express or implied authorization starting on or around July 1, 2020.

62.     In doing so, Defendant APS has violated and continues to violate the Wage Act by failing and refusing to pay Plaintiff for all time she worked and/or for all wages she earned.

63.     At all relevant times, Defendant APS' failure to pay Plaintiff all earned wages and compensation was willful and/or intentional because it knew or showed reckless disregard for whether it complied with the law by intentionally withholding Plaintiff's earned and owed compensation.

64.     As a result of Defendant APS' failure to pay Plaintiff all earned wages and compensation, Defendant APS is liable to Plaintiff for the value of all unlawful deductions of Plaintiff's earned wages, in an amount according to proof at the time of trial.

65.     On July 17, 2020, Plaintiff submitted a written demand for her unpaid wages.

66.     As of the date of this Complaint, Defendant APS has not paid Plaintiff her due and owed earned wages within 14 days of the written demand for payment as required by the Wage Act, or provided any legitimate reason for continuing to withhold her wages.

67.     As a result of Defendant APS' failure to pay Plaintiff all earned wages and compensation, and pursuant to the Wage Act., Plaintiff is also entitled to recover a penalty of 125% of the first $7,500 of the unpaid amounts deducted from Plaintiff's wages, and 50% of any additional amounts in excess of $7,500.

68.     To the extent that Defendant APS' above-described conduct is found to be willful, Plaintiff is also entitled to an additional 50% penalty pursuant to C.R.S. § 8-4-109.

69.     Plaintiff is entitled to and demands payment for all unpaid wages, statutory penalties, and attorneys' fees and costs, in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
**(Colorado Minimum Wage Order, 7 CCR 1103-1 (2019) (2020) (2021))**
*As Against Defendant Accountability Polygraph Services ("APS")*

70.     Plaintiff incorporates by reference all paragraphs in this Complaint as if fully and separately set forth herein.

71.     Defendant APS operates a Retail and Service Business or enterprise covered by the Wage Order as it sells or offers for sale polygraph exam services. Defendant APS generates 50% or more of its annual dollar volume of business from the sale of such services.

72.     Plaintiff was engaged in the performance of work connected with and/or incidental to Defendant APS' covered business or enterprise.

73.     Plaintiff was an employee of Defendant APS as that term is defined in the Wage Order because she performed labor for the benefit of Defendant APS in which Defendant APS commanded when, where, and how much labor she would perform.

74.     Defendant APS agreed to pay Plaintiff commissions for the performance of her labor.

75.     Defendant APS violated the Wage Order when it refused to pay Plaintiff minimum wages for all hours work on February 20 and/or 21, 2020.  In fact, Defendant APS did not pay Plaintiff *any* wages for the work she performed on these dates.

76.     The commissions owed were earned, vested, and determinable during Plaintiff's employment, and thus Defendant APS was obligated to pay these commissions to Plaintiff.

77.     Defendant APS was aware, or should have been aware, of the minimum wage requirements imposed by Colorado law and thus its violations were willful.

78.     As a result of Defendant APS' acts and/or omissions, Plaintiff has suffered lost wages and the lost use of those wages in an amount to be determined at trial.

79.     Plaintiff is therefore entitled to recover unpaid commissions, all applicable penalties, statutory damages, costs, and attorneys' fees.

## FOURTH CLAIM FOR RELIEF
### (Retaliation in Violation of the Colorado Wage Claim Act, C.R.S. § 8-4-120)
### *As Against Defendant Accountability Polygraph Services ("APS")*

80.     Plaintiff incorporates by reference all paragraphs in this Complaint as if fully and separately set forth herein.

81.     C.R.S. § 8-4-120 makes it unlawful for an employer to "intimidate, threaten, restrain, coerce, blacklist, discharge or in any manner discriminate against any employee who has filed any complaint or instituted or caused to be instituted any proceeding under this article or related law or who has testified or may testified in any proceeding on behalf of himself, herself, or another regarding afforded protections under this article."

82.     Plaintiff engaged in the above-described activity protected by C.R.S. § 8-4-120 by complaining to Defendant APS about its unlawful payment practices alleged herein. *See Boeser v. Sharp*, Case No. 03-cv-00031, 2006 WL 898126, at *5 (D. Colo. Mar. 31, 2006) (adopting construction of identical language in FLSA to interpretation of C.R.S. § 8-4-120; "courts interpreting virtually identical language in the [FLSA] have not read the filing and instituting requirements literally but have found 'even the unofficial assertion of rights through complaints at work" to be protected. I adopt this construction . . .") (internal citations and quotations omitted).

83.     Defendant APS retaliated against Plaintiff by terminating her employment because she had engaged in protected activity.

84.     Plaintiff suffered damages as a result of Defendant APS' above-described retaliatory conduct and is entitled to economic and non-economic damages in amounts to be proven at trial.

## FIFTH CLAIM FOR RELIEF
### (Retaliation in Violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3))
### *As Against All Defendants*

85.     Plaintiff incorporates by reference all allegations and Paragraphs in this Complaint as if fully set forth herein.

86.     Defendants terminated Plaintiff after and because of her good faith complaints regarding Defendants' improper payroll deductions and failure to pay wages.

87.     Defendants' actions violate the FLSA, 29 U.S.C. § 215(a)(3), which provides, in pertinent part, that "it shall be unlawful for any person [...] to discharge or in any other manner discriminate against an employee because such employee has filed a complaint or instituted or caused to be instituted any proceeding under or related to this chapter [...]"

88.     Plaintiff engaged in protected activity under the FLSA by communicating to Defendants her reasonable and good faith belief that their failure to pay her for the work she performed on February 20 and/or 21, 2020 was illegal.

89.     Defendants would not have terminated Plaintiff but for her participation in this protected activity.

90.     Defendants' actions have caused Plaintiff to incur economic and non-economic damages and entitle Plaintiff to the legal and equitable remedies provided by 29 U.S.C. § 216(b), including but not limited to, lost wages, liquidated damages, and attorneys' fees and costs, in an amount to be determined at trial.

### SIXTH CLAIM FOR RELIEF
#### (Wrongful Termination In Violation of Public Policy)
#### *As Against Defendant Accountability Polygraph Services ("APS")*

91.     Plaintiff incorporates by reference all allegations and Paragraphs in this Complaint as if fully set forth herein.

92.     Plaintiff refused to forego the exercise of a job-related legal right or privilege, and she performed an act (requesting earned compensation) that public policy would encourage under circumstances where retaliatory discharge is supported by the evidence of Defendant APS' bad faith retaliation. *See Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 104–05 (Colo. 1992).

93.     Plaintiff's termination is a result of her exercising a specific statutory right, which is the right of an employee to be duly compensated by an employer under the Colorado Wage Act. *Hoyt v. Target Stores, Div. of Dayton Hudson Corp.*, 981 P.2d 188, 191 (Colo. App. 1998).

94.     Between February and July of 2020, Plaintiff requested her total compensation, agreed to in the Employment Agreement ("Agreement"), from Defendant APS on several occasions, but was rebuffed.

95.     Less than an hour before Defendant APS terminated Plaintiff, Plaintiff submitted a statutory wage demand for unpaid compensation that she earned and which was agreed to in the Agreement.

96.     Plaintiff's protected activities (demanding earned compensation) caused Defendant APS' unlawful retaliation.

97.     Defendant APS' unlawful retaliation against Plaintiff was willful because Defendant APS knew or showed reckless disregard that its conduct was prohibited by state and federal law.

11

98.     As a result of Defendant APS' conduct, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment, and inconvenience, and is therefore entitled to compensatory damages including lost wages and an additional equal amount as liquidated damages. Plaintiff is also entitled to and seeks her attorneys' fees and costs.

## SEVENTH CLAIM FOR RELIEF
### (Breach of Contract)
### *As Against Defendant Accountability Polygraph Services ("APS")*

99.     Plaintiff incorporates by reference all allegations and Paragraphs in this Complaint as if fully set forth herein.

100.     Plaintiff and Defendant APS executed a valid Employment Agreement ("Agreement"), whereby Defendant APS expressly promised Plaintiff that she would be compensated a percentage of the commission she generated on each polygraph exam she performed for a period of four years.

101.     The Agreement did not contain any language, expressed or implied, indicating that it was permissible for Defendant APS to deduct $25.00 from her paycheck to review her written examinations, nor did Plaintiff ever provide Defendant APS with authorization to make such deductions.

102.     Despite performing under the Agreement, Defendant APS failed to compensate Plaintiff for the six polygraphs she conducted on or around February 20 and 21, 2020.

103.     Additionally, in July of 2020, Defendant APS unlawfully deducted $125.00 from Plaintiff's paycheck without authorization and in contravention of the terms of the Agreement.

104.     By failing to compensate Plaintiff in accordance with the terms of their Agreement and terminating her employment before the expiration of the four years, Defendant APS breached the contractual promises it had made to Plaintiff, and which she reasonably relied upon.

105.     Due to Defendant APS' breach, Plaintiff has suffered damages in an amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF
### (Civil Theft)
### *As Against Defendant Accountability Polygraph Services ("APS")*

106.     Plaintiff incorporates by reference all allegations and Paragraphs in this Complaint as if fully set forth herein.

107.     Plaintiff seeks recover against Defendant APS for civil theft.

108.    Plaintiff's employment services were valuable to Defendant APS.

109.    Defendant APS refused to pay Plaintiff for the work she performed on February 20 and/or 21, 2020 and deducted $125 from her wages without her authority in July of 2020. Such refusal to pay Plaintiff these wages constituted theft.

110.    Defendant APS failed to pay Plaintiff these wages with the intent to permanently deprive her of the use or benefit of the wages she should have received for the services she rendered to Defendant APS.

111.    Plaintiff has suffered damages, including economic loss, as a result of Defendant APS' theft.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A.      Award Plaintiff her contractually agreed compensation due under the CWCA, CMWO and FLSA, which she is entitled to and demands;

B.      Award Plaintiff penalties under the CWCA, CMWO and FLSA;

C.      Award Plaintiff any applicable statutory penalties derived from the CWCA, CMWO and FLSA;

D.      Award Plaintiff liquidated damages;

E.      Award any applicable punitive damages;

F.      Award Plaintiff pre-judgment and post-judgment interest at the highest lawful rate;

G.      Award Plaintiff reasonable attorneys' fees, as well as the costs of this action; and

H.      Award such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted this 12th day of March 2021.

**HKM EMPLOYMENT ATTORNEYS LLP**

By: *s/ Julian G.G. Wolfson*
      Julian G.G. Wolfson (50603)
      Claire E. Hunter (39504)
      HKM Employment Attorneys LLP
      730 17th Street, Suite 750
      Denver, Colorado 80202
      Telephone: (720) 668-8989
      Direct Cell: (408) 656-8807
      jwolfson@hkm.com
      chunter@hkm.com

      *Attorneys for Plaintiff Martha Lugo*

<u>Plaintiff Martha Lugo's Address:</u>
12038 E. Ford Circle
Aurora, CO 80012

14

**FORM 1.2. DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD-PARTY COMPLAINT AND JURY DEMAND**

DATE FILED: March 13, 2021 6:28 PM
FILING ID: 32D01B832DC9A
CASE NUMBER: 2021CV30486

| | |
|---|---|
| DISTRICT COURT, ARAPAHOE COUNTY, STATE OF COLORADO<br><br>Court Address:<br>7325 S. Potomac Street<br>Centennial, Colorado 80112 | |
| **Plaintiff:**<br><br>**MARTHA LUGO**<br><br>**v.**<br><br>**Defendants:**<br><br>**TRUTH CORPORATION, d/b/a ACCOUNTABLITY POLYGRAPH SERVICES, a Colorado Corporation; and**<br><br>**GALE J. PAGE, an individual.** | ▲ **COURT USE ONLY** ▲<br><br>Case Number: _____<br><br>Ctrm.: _____    Div.: _____ |
| Attorneys:   Julian G.G. Wolfson, #50603<br>              Claire Hunter, #39504<br>Address:     HKM Employment Attorneys, LLP<br>              730 17th Street, Suite 750<br>              Denver, CO 80202<br>Phone No.:  720.668.8989<br>E-mail:      jwolfson@hkm.com<br>              chunter@hkm.com | |

**DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD-PARTY COMPLAINT AND JURY DEMAND**

1. This cover sheet shall be filed with the initial pleading of a complaint, counterclaim, cross-claim or third-party complaint in every district court civil (CV) case. It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental

Health (MH) cases. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

2. Simplified Procedure under C.R.C.P. 16.1 **applies** to this case **unless** (check one box below if this party asserts that C.R.C.P. 16.1 **does not** apply):

☐ This is a class action, forcible entry and detainer, Rule 106, Rule 120, or other similar expedited proceeding, **or**

☑ This party is seeking a monetary judgment against another party for more than $100,000.00, including any penalties or punitive damages, but excluding attorney fees, interest and costs, as supported by the following certification:

By my signature below and in compliance with C.R.C.P. 11, based upon information reasonably available to me at this time, I certify that the value of this party's claims against one of the other parties is reasonably believed to exceed $100,000."

**Or**

q  Another party has previously filed a cover sheet stating that C.R.C.P. 16.1 does not apply to this case.

3. ☑ This party makes a **Jury Demand** at this time and pays the requisite fee. See C.R.C.P. 38. (Checking this box is optional.)

Date: __March 12, 2021__            _s/ Julian G.G. Wolfson_____
                                     **Signature of Party or Attorney for Party**

**NOTICE**
This cover sheet must be served on all other parties along with the initial pleading of a complaint, counterclaim, cross-claim, or third-party complaint.

| | |
|---|---|
| ☐ County Court  ☒ District Court<br>Arapahoe County, Colorado | |
| District Court,<br>7325 S Potomac St<br>Centennial, Colorado 80112 | DATE FILED: March 22, 2021 11:59 AM<br>FILING ID: FEA739C93CF0D<br>CASE NUMBER: 2021CV30486 |
| Plaintiff: Martha Lugo<br>v.<br>Defendant: Truth Corporation dba Accountability Polygraph<br>Services; and Gale J. Page | ▲   **COURT USE ONLY**   ▲ |
| Attorney or Party Without Attorney: | Case Number: 2021CV30486 |
| Phone Number:          E-mail:<br>FAX Number:             Atty. Reg. #: | Division_____ Courtroom_____ |
| **AFFIDAVIT OF SERVICE** | |

Received by Professional Process Servers, LLC to be served on **Gale J. Page, 9726 Sunset Hill Place, Lone Tree, CO 80124**.

I, Michael LeJon, being duly sworn, depose and say that on the **17th day of March, 2021** at **7:27 pm, I:**

**INDIVIDUALLY/PERSONALLY** served by delivering a true copy of the **District Court Civil Summons, Complaint and Jury Demand, Delay Reduction Order, District Court Civil Case Cover Sheet for Initial Pleading of Complaint, Counterclaim, Cross-Claim or Third Party Complaint** to: **Gale J. Page** at the address of: **9726 Sunset Hill Place, Lone Tree, CO 80124**, and informed said person of the contents therein, in compliance with state statutes.

**Additional Information pertaining to this Service:**
3/17/2021  7:27 pm  approximately 55-60-year-old white male 5-ft 9-in tall 165 lb gray hair

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served.

Subscribed and Sworn to before me on the 18th
day of ____March 2021____ by the affiant
who is personally known to me.

_____
NOTARY PUBLIC

CASSANDRA PRICE-DOUGLAS
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20154041051
MY COMMISSION EXPIRES OCTOBER 27, 2023

_____
Signature of Process Server

**Michael LeJon**
Process Server

Professional Process Servers, LLC
998 East Davies Avenue
Centennial, CO 80122
(303) 515-7250

| | |
|---|---|
| ☐ County Court  ☒ District Court<br>Arapahoe County, Colorado<br><br>District Court,<br>7325 S Potomac St<br>Centennial, Colorado 80112 | DATE FILED: March 17, 2021 9:08 AM<br>FILING ID: BC3EA3B66D607<br>CASE NUMBER: 2021CV30486 |
| Plaintiff: Martha Lugo<br>v.<br>Defendant: Truth Corporation dba Accountability Polygraph<br>Services; and Gale J. Page | ▲    **COURT USE ONLY**    ▲ |
| Attorney or Party Without Attorney: | Case Number: 2021CV30486 |
| Phone Number:                    E-mail:<br>FAX Number:                      Atty. Reg. #: | Division_____ Courtroom_____ |
| **AFFIDAVIT OF SERVICE** ||

Received by Professional Process Servers, LLC to be served on **Truth Corporation Dba Accountability Polygraph Services c/o Gale Jay Page, 68 Inverness Lane E, Ste 201, Englewood, CO 80112**.

I, Michael LeJon, being duly sworn, depose and say that on the **16th day of March, 2021** at **3:34 pm, I:**

served an **AUTHORIZED** entity by delivering a true copy of the **District Court Civil Summons, Complaint and Jury Demand, Delay Reduction Order, District Court Civil Case Cover Sheet for Initial Pleading of Complaint, Counterclaim, Cross-Claim or Third Party Complaint** to: **Jason Page** as **Senior Examiner** at the address of: **68 Inverness Lane E, Ste 201, Englewood, CO 80112**, who stated they are authorized to accept service for **Truth Corporation Dba Accountability Polygraph Services**, and informed said person of the contents therein, in compliance with state statutes.

**Additional Information pertaining to this Service:**
3/16/2021  3:34 pm  approximately 45-year-old white nail 6 ft 2 in tall 250 lb brown gray hair

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served.

Signature of Process Server

Subscribed and Sworn to before me on the 17th
day of _____ March 2021 _____ by the affiant
who is personally known to me.

_____
NOTARY PUBLIC

**Michael LeJon**
Process Server

Professional Process Servers, LLC
998 East Davies Avenue
Centennial, CO 80122
(303) 515-7250

CASSANDRA PRICE-DOUGLAS
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20154041051
MY COMMISSION EXPIRES OCTOBER 27, 2023

<table>
<tr><td>

DISTRICT COURT<br>
ARAPAHOE COUNTY, COLORADO<br>
Arapahoe County Justice Center<br>
7325 S. Potomac St.<br>
Centennial, CO 80112

</td><td></td></tr>
<tr><td>

Plaintiff(s):  Lugo, Martha<br><br>
v.<br><br>
Defendant(s): Truth Corporation, et al

</td><td>

Case Number:  2021CV30486<br><br>
Division:  204

</td></tr>
</table>

DATE FILED: March 16, 2021 9:58 AM ▲ COURT USE ONLY
CASE NUMBER: 2021CV30486

**DELAY REDUCTION ORDER**

(FOR CASES FILED ON OR AFTER JULY 1, 2015)

This Court is on a delay reduction docket.

A.   For all civil actions, the following deadlines must be met:

1.   <u>Service of Process</u>:  Returns of service on all defendants shall be filed within 63 days after the date of the filing of the complaint.

2.   <u>Default Judgment</u>:  Application for default judgment shall be filed within 35 days after default has occurred.

3.   <u>Trial Setting</u>:

a.   For actions governed by C.R.C.P. 16, the trial shall be set at the case management conference.  Pursuant to C.R.C.P. 16(d)(1), the case management conference shall be held no later than 49 days after the case is at issue. The responsible attorney shall file and serve a notice to set the case management conference no later than 7 days after the case is at issue. The proposed case management order is due no later than 7 days prior to the conference.

   i.   "The responsible attorney" shall mean plaintiff's counsel, if the plaintiff is represented by counsel, or if not, the defense counsel who first enters an appearance in the case.

   ii.   A case shall be deemed at issue when all parties have been served and all pleadings permitted by C.R.C.P. 7 have been filed or defaults or dismissals have been entered against all non-appearing parties, or at such other time as the Court may direct.

b.   For actions governed by Simplified Procedure under C.R.C.P. 16.1, the responsible attorney shall set the case for trial pursuant to C.R.C.P. 121, 1-6 no later than 42 days after the case is at issue, unless otherwise ordered by the Court.

      i.  "The responsible attorney" shall mean plaintiff's counsel, if the plaintiff is represented by counsel, or if not, the defense counsel who first enters an appearance in the case.

      ii.  A case shall be deemed at issue when all parties have been served and all pleadings permitted by C.R.C.P. 7 have been filed or defaults or dismissal have been entered against all non-appearing parties, or at such other time as the Court may direct.

B.     A District Court Civil Cover Sheet (JDF 601) shall be filed with all civil complaints.

C.     Plaintiff shall send a copy of this Order to all other parties who enter an appearance, and shall file a certificate of mailing within 14 days following the entry of appearance.

D.     Any attorney entering an appearance in this case who is aware of a related case is ordered to complete and file in this case a document entitled "Information Regarding Case(s)" informing the Court of the related case(s) and stating whether consolidation is appropriate.

E.     If an attorney or pro se party fails to comply with this Order, the Court may dismiss the case without prejudice.

Date:   03/16/2021

                              BY THE COURT:
                              ASSIGNED JUDGE

| DISTRICT COURT<br>ARAPAHOE COUNTY, COLORADO<br>Arapahoe County Justice Center<br>7325 S. Potomac St.<br>Centennial, CO 80112 | |
|---|---|
| | ▲ COURT USE ONLY ▲ |
| Plaintiff(s):<br><br>v.<br><br>Defendant(s): | Case Number:<br><br>Division: |

## ORDER REGARDING PLAN FOR SETTLEMENT PURSUANT TO C.R.C.P. 16(b)(7) and C.R.S. §§ 13-22-311, 313

The following Orders apply to this case.

1. This Order applies to all civil cases filed at this Court.

2. No later than 35 days after the case is at issue, the parties shall explore the possibility of a prompt settlement or resolution of the case.

3. No later than 42 days after the case is at issue, the parties shall submit a document entitled "Stipulated Plan Regarding Settlement" setting forth their plans for future efforts to settle the case to the Court. Unless notified otherwise by the Court, the Stipulated Plan Regarding Settlement is automatically adopted as an Order of the Court.

   The Stipulated Plan Regarding Settlement (ADR Plan) must include the following:

   a. Specification of the selected form of ADR. The parties may select any form of ADR defined in C.R.S. § 13-22-302.

   b. Designation of a provider who has been contacted and has agreed to provide ADR services to the parties. The parties may select any provider available in the community including Office of Dispute Resolution (ODR). ODR offers moderately priced mediation and other ADR services. ODR can be scheduled at www.ColoradoODR.org or call 720-625-5940.

4. If no stipulated plan is submitted within 42 days of the case being at issue, the Court-ordered plan shall be that the parties must participate in mediation with ODR no later than 63 days prior to the trial date.

5. Failure to comply with this Order may result in sanctions including, but not limited to, loss of trial date.

-3-

6. The parties must certify in the proposed Trial Management Order (due 28 days before trial) that they have complied with the Stipulated Plan Regarding Settlement or with ODR pursuant to paragraph 3 above.

7. Plaintiff shall send a copy of this Order to all other parties who enter an appearance and shall file a certificate of mailing within 14 days following the entry of appearance.

BY THE COURT:
ASSIGNED JUDGE

-4-

| | |
|---|---|
| DISTRICT COURT<br>ARAPAHOE COUNTY, COLORADO<br>Arapahoe County Justice Center<br>7325 S. Potomac St.<br>Centennial, CO 80112 | |
| | ▲ COURT USE ONLY ▲ |
| Plaintiff(s):<br><br>v.<br><br>Defendant(s): | Case Number:<br><br>Division: |

**ORDER REGARDING PLAN FOR SETTLEMENT PURSUANT TO C.R.C.P. 16(b)(7) and C.R.S. §§ 13-22-311, 313**

The following Orders apply to this case.

1. This Order applies to all civil cases filed at this Court.

2. No later than 35 days after the case is at issue, the parties shall explore the possibility of a prompt settlement or resolution of the case.

3. No later than 42 days after the case is at issue, the parties shall submit a document entitled "Stipulated Plan Regarding Settlement" setting forth their plans for future efforts to settle the case to the Court. Unless notified otherwise by the Court, the Stipulated Plan Regarding Settlement is automatically adopted as an Order of the Court.

   The Stipulated Plan Regarding Settlement (ADR Plan) must include the following:

   a. Specification of the selected form of ADR. The parties may select any form of ADR defined in C.R.S. § 13-22-302.

   b. Designation of a provider who has been contacted and has agreed to provide ADR services to the parties. The parties may select any provider available in the community including Office of Dispute Resolution (ODR). ODR offers moderately priced mediation and other ADR services. ODR can be scheduled at www.ColoradoODR.org or call 720-625-5940.

4. If no stipulated plan is submitted within 42 days of the case being at issue, the Court-ordered plan shall be that the parties must participate in mediation with ODR no later than 63 days prior to the trial date.

5. Failure to comply with this Order may result in sanctions including, but not limited to, loss of trial date.

-3-

6.  The parties must certify in the proposed Trial Management Order (due 28 days before trial) that they have complied with the Stipulated Plan Regarding Settlement or with ODR pursuant to paragraph 3 above.

7.  Plaintiff shall send a copy of this Order to all other parties who enter an appearance and shall file a certificate of mailing within 14 days following the entry of appearance.

BY THE COURT:
ASSIGNED JUDGE

-4-